64 N.J. Super. 69 (1960)
165 A.2d 219
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN MOFFA, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 9, 1960.
*71 Mr. Norman Heine, Prosecutor of Camden County (Mr. Charles A. Rizzi, Assistant Prosecutor, attorney for the State).
Mr. Joseph Tomaselli for the defendant (Messrs. Malandra and Tomaselli, attorneys).
MARTINO, J.C.C. (temporarily assigned).
The defendant stands charged upon two indictments. In one indictment he is charged with false swearing under N.J.S. 2A:131-4; in the other indictment with procuring of another to commit the crime of perjury, N.J.S. 2A:85-14. In both indictments the State concedes that its principal witness will be one Butler Blevins and this witness will testify for the State. The defendant has applied to the court to inspect the grand jury testimony of this witness and also any statements made by him and in the possession of the prosecutor. The State resists both applications.
"It should with equal candor be conceded that a deficiency in our present handling of criminal matters is the lack of *72 adequate facilities for factual investigation by defendants." State v. Johnson, 28 N.J. 133, 142 (1958). It has been decided that a defendant may at the time of trial call for production of prior statements of witnesses. State v. Hunt, 25 N.J. 514 (1958). The court in Johnson, supra, stated that it was not prepared to authorize pretrial inspection of statements of prospective witnesses, and cited R.R. 3:5-11 as barring such relief. Until our highest court finds it appropriate to amend that rule, this court is bound to enforce it unless a reason to relax it pursuant to R.R. 1:27A is supplied. Nothing appears to justify its relaxation; therefore, the right to inspect any statements of the witnesses is denied.
As to the right to inspect the testimony given by this witness before the grand jury in advance of trial, a different question is presented which does not appear to come within the prohibition of R.R. 3:5-11.
The right to impeach a witness in any subsequent trial, civil or criminal, by self-contradictory testimony given by him before a grand jury, has been settled since State v. Bovino, 89 N.J.L. 586 (E. & A. 1916); also see State v. Silverman, 100 N.J.L. 249 (Sup. Ct. 1924).
The free and impartial administration of justice requires that proceedings before grand juries shall in some respects and to some extent be kept secret, but the sanction of secrecy has limitations. State v. Donovan, 129 N.J.L. 478 (Sup. Ct. 1943).
Our court of last resort has held it to be reversible error to refuse inspection of testimony given to a grand jury and its use in cross-examination of the witness. State v. Mucci, 25 N.J. 423 (1957). However, in that case the occasion arose during the actual trial, when it developed that the State's witnesses had been provided with their grand jury testimony, which was read by them and discussed before trial. Also see State v. Samurine, 47 N.J. Super. 172, 178 (App. Div. 1957).
*73 While the facts in Mucci, supra, are dissimilar, it does indicate the right to examine grand jury testimony and use it to cross-examine a witness under certain circumstances. If, by chance, it should develop at the trial that the State's principal witness in the case sub judice did examine a transcript of his grand jury testimony before trial, a refusal by the court to permit examination of this testimony by defense counsel in order to cross-examine would run counter to Mucci. However, the question here presented is directed to the right to examine the testimony in advance of trial and regardless of whether or not the contingency referred to in Mucci occurs.
The indictments which occasioned this application had their genesis in the testimony by the witness Butler Blevins before a grand jury. The indictments set forth with specificity every facet of the testimony of this witness before the grand jury which the State expects to prove to warrant a conviction. The indictments do not and of necessity did not require all this witness's testimony. Since the testimony outlined in the indictment which composes the crime has been exposed publicly, it is difficult to reason that any harm will come to the State from making available that testimony which in the opinion of the State contains a narrative of his testimony which was not required as a constituent part of the indictment. The defendant could be prejudiced by a failure to examine this testimony since it might indicate evidence which is inconsistent, contradictory and exculpative.
The court has an obligatory duty to never impose upon the State in a criminal prosecution a burden which will handicap its duty to administer the cause of justice. By the same token, it owes a duty to a defendant on trial in a cause which may stigmatize him to protect every civil right to which he is entitled.
The right to secure testimony before trial of the State's principal witness before a grand jury does not seem to have been passed upon in our courts.
*74 In the federal system the courts have decided that testimony of a defendant before a grand jury is available to him in the preparation of his defense. United States v. Remington, 191 F.2d 246, 250 (2 Cir. 1951), certiorari denied 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952); United States v. Rose, 215 F.2d 617 (3 Cir. 1954).
In Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), the court had before it a situation where, during cross-examination of a principal witness for the Government, it developed that he had testified three times before the grand jury, whereupon defense counsel asked the right to inspect the grand jury record of testimony relating to "the same general subject matter" as his trial testimony. The refusal by the trial court to allow this privilege was sustained. Mr. Justice Brennan dissented, and he was joined by three other members of the court. It should be noted that the majority opinion stated,
"It does not follow, however, that grand jury minutes should never be made available to the defense. This Court has long held that there are occasions * * * when the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial. Certainly `disclosure is wholly proper where the ends of justice require it.' * * * The burden, however, is on the defense to show that `a particularized need' exists for the minutes which outweighs the policy of secrecy."
This opinion would seem to rest its decision upon a discretionary right in the trial court.
Mr. Justice Brennan in his minority view said:
"Grand jury secrecy is, of course, not an end in itself. Grand jury secrecy is maintained to serve particular ends. But when secrecy will not serve those ends or when the advantages gained by secrecy are outweighed by a countervailing interest in disclosure, secrecy may and should be lifted, for to do so in such a circumstance would further the fair administration of criminal justice. * * * Four reasons have been advanced * * * for grand jury secrecy. (1) To prevent the accused from escaping before he is indicted and *75 arrested or from tampering with the witnesses against him. (2) To prevent disclosure of derogatory information presented to the grand jury against an accused who has not been indicted. (3) To encourage complainants and witnesses to come before the grand jury and speak freely without fear that their testimony will be made public thereby subjecting them to possible discomfort or retaliation. (4) To encourage the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments during the proceedings." (Emphasis added)
The only reason that might be applicable to the present case appears to be reason indicated under (3). The indictment in the case sub judice has made public with clarity and definiteness that part of the State witness's testimony which resulted in the indictment.
6 Wigmore, Evidence, sec. 1850, p. 395 (1940), in discussing the method in England where a defendant is entitled to receive all the testimony produced against him before a magistrate (grand juries do not exist), suggests that this practice represents a belief that such inspection is in many situations nothing less than is required by fairness to an innocent accused. He further suggests that such a measure may, of course, be abused by the unscrupulous and, therefore, its allowance should be left to the trial court's discretion.
The impeachment of the State's principal witness on the basis of prior inconsistent or contradictory statements made under oath before a grand jury would have an important effect on a trial. Before such a fact can be established defendant would need access to the testimony. To grant the right arbitrarily to inspect a principal witness's grand jury testimony in every case might impair the proper administration of justice. Each application should be decided upon its particular facts. This is not a case where a witness may or may not be called to testify. The State is obliged to produce this witness or its case will fail. The prosecution admits this fact.
The facts presented justify the conclusion that the defendant should have the opportunity to inspect the grand jury testimony of the witness Butler Blevins before trial.